IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK STUCKEY, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. __________ |
| | § | |
| JAMES ESTEBAN, | § | JURY TRIAL DEMANDED |
| *Defendant.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Mark Stuckey ("Stuckey") files this Original Complaint against Defendant James Esteban ("Esteban"), and respectfully shows the Court as follows:

**I. NATURE OF THE ACTION**

1. This is an action for defamation. Esteban, a former employee of Unicat Catalyst Technologies, LLC ("Unicat"), told Unicat's customer that Unicat's CEO, Stuckey, and other leadership had pressured him to present falsified or misleading test data to the customer, and that he went along for fear of losing his job. That accusation is false. The customer has since sued Stuckey personally for fraud based on Esteban's accusation.

**II. PARTIES**

2. Plaintiff Mark Stuckey is an individual who resides in Dewsbury, West Yorkshire, England. Stuckey is a citizen of the United Kingdom and is not a citizen or lawful permanent resident of the United States. Stuckey is the Chief Executive Officer of Unicat.

3. Defendant James Esteban is an individual who is a citizen of Texas, domiciled in Harris County, Texas. He may be served at 5914 Soaring Pine Court, Kingwood, Texas 77345, or wherever he may be found.

## III. JURISDICTION AND VENUE

4. The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2). This is a civil action between a citizen of a State (Esteban, a citizen of Texas) and a citizen of a foreign state (Stuckey, a citizen of the United Kingdom and is not a citizen of the United States), and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. The Court has personal jurisdiction over Esteban because he is domiciled in Texas.

6. Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(1) because Esteban resides in Harris County, Texas, and under § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District, where Esteban made the statements at issue.

## IV. FACTS

### A. Esteban's role and the DGC project

7. Unicat manufactures and supplies catalysts for industrial applications. Unicat employed Esteban as a Senior Technical Manager from January 2023 until his resignation on April 3, 2025. In that role, Esteban advised Unicat's customers on catalyst performance and operational issues, and he was responsible for specifying the catalyst material that fit each customer's needs. Stuckey, as Unicat's Chief Executive Officer, was Esteban's superior.

8. Esteban was responsible for formulating Unicat's proposal to Dakota Gasification Company ("DGC"), a subsidiary of Basin Electric Power Cooperative. DGC sought catalyst for the methanation unit of its coal gasification plant. Esteban provided, reviewed, and approved the technical specification for DGC's application, a blend of Unicat's MC-710R and Magcat PR catalysts.

9. In October 2024, DGC reported that the catalyst in its methanation unit had rapidly lost activity. DGC's plant had also experienced a boiler feed water leak that introduced water into the system.

**B. Esteban's own root-cause hypothesis**

10. Unicat worked with DGC to determine the root cause, and Esteban specified the laboratory testing. On November 6, 2024, he wrote that he suspected the most likely cause the testing would identify was poor reduction resulting from the boiler feed water leak.

11. On December 18, 2024, when early test results came back, Esteban wrote that they were "a solid piece of evidence to confirm that the in-situ reduction at Basin was likely unsuccessful and inhibited due to the excess water from the BFW leak."

**C. Unicat's initial internal review**

12. On January 14, 2025, Unicat's laboratory circulated a report to a working group that included Esteban and Stuckey that stated that the MC-710 catalyst was poorly manufactured and unfit for methanation and that water intrusion was not the issue. In an email conversation on January 15, 2025, members of the working group, including Stuckey and Esteban, questioned the report's conclusions because its bench testing did not replicate the water ingress, or the water chemistry, present in DGC's reactor. One employee (Gary B) wrote that he believed that, notwithstanding the report and questions raised about the quality of the MC-710R catalyst, the catalyst was not fully reduced due to the water leak. Stuckey wrote to the group that "we truly don't know the impact of the water leak."

13. Esteban responded to the working group by stating: "I cannot agree more with your response! Having been a part of this entire project, I am much more aligned with Gary B. that there are considerations on how we communicate to the customer, and I have some reservations about the conclusions drawn from the testing." This contemporaneous email cannot be reconciled with Esteban's later statements that the report convinced him, when he read it on January 14, 2025, that Unicat was responsible for the catalyst failure.

**D. Esteban's January 2025 communications to DGC**

14. On January 22, 2025, Esteban emailed DGC Unicat's preliminary findings. He attributed the catalyst deactivation to very poor activation during reduction due to hydrothermal sintering of the nickel. He stated that this sintering had "an extremely detrimental effect on the traditionally extruded MC-710R catalyst," and that excessive water in the system had largely doomed the reduction from the start.

15. In late January 2025, Esteban and a Unicat colleague presented DGC with a slide deck that identified the boiler feed water leak as the root cause and recommended that DGC use Unicat's MC-730R in place of MC-710R in its next load.

16. Stuckey never directed Esteban to falsify, fabricate, or alter any laboratory data or test result, and never threatened Esteban's employment. Esteban has testified that the direction he received about what to tell DGC came from two other members of the working group, not from Stuckey, and that neither of them threatened to fire him. Stuckey denies that anyone at Unicat directed Esteban to mislead DGC.

**E. Esteban's resignation from Unicat**

17. Esteban resigned from Unicat on April 3, 2025. His resignation letter stated that he had genuinely enjoyed his two years with Unicat. Stuckey, who was surprised by the resignation, spoke with Esteban on April 5, 2025, and asked him to reconsider.

18. On April 7, 2025, Esteban sent Stuckey a lengthy email explaining his reasons for leaving. That email did not mention DGC, the laboratory report, or any claim that anyone had pressured Esteban to mislead DGC.

**F. Esteban's false statements to DGC**

19. In April or May 2025, shortly after resigning, Esteban telephoned Jason Maier of DGC. He told Maier there had been "dishonesty" in how matters were handled and that, in his view,

DGC had suffered from it. Around the same time, Esteban had a similar telephone conversation with Trinity Turnbow, the manager of DGC's plant.

20. On or about May 6, 2025, Esteban contacted DGC's legal department. According to DGC's federal complaint, Esteban told DGC that "Unicat, its CEO, and other leadership" pressured him to make a presentation to DGC containing misleading data about the cause of the catalyst failure; that Unicat management required him to present misleading test results; and that he complied for fear of losing his job. According to DGC's verified Rule 202 petition, Esteban confirmed to DGC employees that his superiors at Unicat had told him to present falsified lab analysis reports. Esteban now claims not to recall telling DGC that Unicat instructed him to present altered lab data or that he acted under threat of termination, but he concedes that DGC may have drawn those inferences from what he told them.

21. Esteban's statements were of and concerning Stuckey. Stuckey was Esteban's superior and is Unicat's Chief Executive Officer. By DGC's own account, Esteban accused Unicat's "CEO" of pressuring him to mislead DGC. DGC understood Esteban's statements to refer to Stuckey; it has since sued Stuckey individually for fraud based on them.

22. Esteban's statements were false. Stuckey never required, instructed, or pressured Esteban to present falsified lab analysis reports or misleading test results, and never threatened his job. The water-related explanation that Esteban gave DGC in January 2025 matched the view he himself had put in writing beginning in November 2024, before the January 2025 report existed.

23. Esteban knew his statements about Stuckey were false, or made them with reckless disregard for their truth. He authored the very explanation he later claimed he was forced to give, and he endorsed the working group's approach in writing at the time. Even so, he told DGC that Unicat's CEO had pressured him to mislead DGC.

### G. Discovery of the statements and resulting harm

24. Esteban made his statements privately, in non-public telephone calls to DGC personnel and DGC's legal department. Stuckey did not know of the statements, and could not reasonably have discovered them, until November 13, 2025. On that date, Stuckey received a copy of DGC's Verified Petition to Conduct Depositions to Investigate Claims in *In re Petition of Dakota Gasification Company*, Cause No. 2025-86252, in the 234th Judicial District Court of Harris County, Texas, which DGC had filed on November 12, 2025.

25. DGC has since sued Unicat and Stuckey in this Court in *Dakota Gasification Company v. Unicat Catalyst Technologies, LLC, et al.*, No. 3:26-cv-00071 (S.D. Tex., Galveston Division). Relying on Esteban's accusations, DGC alleges that Unicat and its CEO pressured Esteban to present misleading data about the cause of the catalyst failure, and it asserts a claim for fraud by non-disclosure against Stuckey individually.

26. As a result of Esteban's statements, Stuckey has suffered injury to his reputation in his business and profession, as well as mental anguish, embarrassment, and humiliation. He has also been forced to defend himself individually against fraud claims premised on Esteban's accusations.

## V. COUNT ONE: DEFAMATION

27. Stuckey incorporates the preceding paragraphs by reference.

28. **Publication.** Esteban published statements to third parties, including DGC's legal department and other DGC personnel. He stated that Unicat's CEO, Stuckey, and other Unicat leadership required him to present falsified lab analysis reports and misleading test results to DGC, and that he complied for fear of losing his job.

29. **Statements of fact.** Esteban's statements assert objectively verifiable facts: that specific persons directed a specific act of dishonesty toward a specific customer, under threat to his employment. Either that happened or it did not. The statements are not opinion.

30. **Of and concerning Stuckey.** As alleged in Paragraph 21, the statements referred to Stuckey, and their recipients understood them to refer to Stuckey.

31. **Falsity.** The statements are false. Stuckey never required, instructed, or pressured Esteban to present falsified or misleading test results to DGC, and never threatened his employment.

32. **Defamatory meaning.** Construed as a whole and in light of the surrounding circumstances, the statements would lead a person of ordinary intelligence to believe that Stuckey deceived a customer and coerced a subordinate into doing so. The statements are defamatory per se because they injure Stuckey in his business, profession, and occupation by accusing him of dishonesty and fraud in his dealings with a customer. Alternatively, they are defamatory per quod.

33. **Fault.** Stuckey is a private individual, and the statements concern a private commercial dispute. Esteban was at least negligent in publishing them. Esteban also acted with actual malice: he knew the statements were false, or published them with reckless disregard for whether they were false, for the reasons alleged in Paragraph 23.

34. **No privilege.** Esteban's statements were not privileged. To the extent Esteban asserts any qualified privilege, it is defeated because he published the statements with actual malice.

35. **Damages.** Because the statements are defamatory per se, damages to Stuckey's reputation and for mental anguish are presumed. Stuckey has also suffered actual injury to his reputation, mental anguish, embarrassment, and humiliation, and has been forced to defend fraud claims premised on the statements. Stuckey seeks general and special damages in an amount exceeding $75,000, or nominal damages in the alternative.

36. **Limitations and the discovery rule.** Stuckey's claim is timely. Esteban published his statements in private telephone conversations that were not public and that Stuckey had no reasonable means of learning about. The injury was therefore inherently undiscoverable and objectively verifiable. Stuckey did not know, and in the exercise of reasonable diligence could not have known, of the

statements until November 13, 2025, as alleged in Paragraph 24. Stuckey filed this suit within one year of that date.

37. **Defamation Mitigation Act.** On November 10, 2026, within the limitations period, Stuckey served Esteban with a written request for correction, clarification, or retraction under Texas Civil Practice and Remedies Code § 73.055. To date, Esteban has not corrected, clarified, or retracted his statements.

## VI. JURY DEMAND

38. Under Federal Rule of Civil Procedure 38, Stuckey demands a trial by jury on all issues so triable.

## VII. PRAYER

Stuckey respectfully requests that Esteban be summoned to appear and answer, and that on final trial the Court enter judgment for Stuckey against Esteban for:

1. General and special damages for defamation, including damages for injury to reputation and mental anguish, or nominal damages in the alternative;
2. Pre-judgment and post-judgment interest at the maximum lawful rate;
3. All costs of court; and

4. All other relief, at law or in equity, to which Stuckey is justly entitled.

Dated: November 10, 2026

Respectfully submitted,

*/s/ Kenneth P. Held*
Kenneth P. Held (Attorney-in-Charge)
Texas Bar No. 24030333
S.D. Tex. Bar No. 29197
Lauren H. Harris
Texas Bar No. 24046052
S.D. Tex. Bar No. 569704
FLETCHER HELD, PLLC
808 Travis Street, Suite 1553
Houston, Texas 77002
Phone: 713.255.0416
Fax : 713.360.1380
kheld@fletcherheld.com

***Attorneys for Plaintiff, Mark Stuckey***